PUBLIC SERVICE RAILWAY COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., DEFENDANTS.

Submitted November 23, 1914—Decided March 1, 1915.

1. Where a street railway company and the counties interested consent to the making of an order by the board of utility commissioners requiring the railway company to connect its lines running to each side of a county bridge, lay its tracks, and operate its line across the bridge, and it complies with such order, it is estopped to deny the power of the board to make the order to which it consented and of which it has availed itself as a privilege to use the bridge.

2. The legislature has the power to fix the compensation to be paid for the use of a county bridge by a street railway company, and to delegate to the board of public utility commissioners the power to ascertain what is a reasonable compensation.

3. Such compensation is not a tax, but may be imposed for a distinct and unusual use, requiring a more expensive structure than the ordinary use by the public demands, for the additional cost is for the benefit of a private enterprise in excess of the public need and for which it should pay a reasonable compensation.

4. The court will not, on appeal, disturb the order of the board in fixing a rate for such use unless it be unreasonable or based upon some illegal principle, or lacks evidential support.

On appeal from the Supreme Court, whose opinion is reported in 86 *N. J. L.* 105.

For the appellant, *Frank Bergen.*

For the respondents, *Frank H. Sommer, Benjamin F. Jones* and *Joseph M. Noonan.*

The opinion of the court was delivered by

BERGEN, J.   This appeal is brought to review a judgment of the Supreme Court affirming an order of the board of public utility commissioners, requiring the prosecutor to pay compensation to the counties of Hudson and Essex for the use of a bridge on Clay street over the Passaic river, built at the joint expense of the two counties, the river being the boundary line.

The facts pertinent to this issue, are that the prosecutor had, for many years, used a bridge across the Passaic river for the operation of its trolley railroad along Clay street which extended from the city of Newark in Essex county, to East Newark in Hudson county, paying therefor compensation fixed by a contract between the counties and the prosecutor. It became necessary, for the safety of the public, to remove this bridge and replace it with a more substantial structure. The improvement prevented the continuous running of prosecutor's cars across the river during construction, and this condition continued thereafter because the two counties and the prosecutor could not agree upon the terms of compensation for the use of the new bridge, to the great inconvenience and annoyance of the public entitled to transportation over prosecutor's railway, and to remedy this the legislature in 1913 (*Pamph. L., p.* 777), enacted a statute providing that where a street railway company operated its line through any street in which a bridge forms a connecting link, and it has a franchise to use the street on either side of said bridge, but no authority to lay its tracks on the bridge, or its right is disputed, and the municipalities owning the bridge and the railway company cannot agree upon the terms

and conditions for its use, then either the railway company, the municipality, or any taxpayer, might apply to the board of utility commissioners, for a direction that the railway company lay its tracks on such bridge and operate its cars thereon for the convenience of the public, and to fix the terms for its use. Such an application was made in this case by a taxpayer who filed his petition praying that the board order the prosecutor to lay its tracks upon, and operate its cars over, the bridge, and fixing the terms of such use. To this petition the prosecutor filed its answer averring its willingness to construct its tracks and operate its cars across the bridge if the necessary permission be granted on reasonable terms. At the hearing, a stipulation was entered into by the prosecutor and the counties, which, after stating that the jurisdictional facts required by the statute existed, provided that "an order may issue, by consent, that shall require the company to lay its tracks across Clay street bridge and operate its cars thereover  *  *  *  said order requiring the laying of the tracks and the operation of cars across the bridge shall not effect the subsequent determination of the matter of the annual compensation, if any, to be paid." In accordance with this stipulation, the board made the order consented to, reserving the right to fix the compensation for the use of the bridge which it did by its order dated September 29th, 1913, adjudging that the prosecutor pay annually to the counties, in equal shares, the sum of $2,644.46, and it is this order which the writ allowed in this case seeks to review.

While the matters consented to do not appear to be within the purview of the writ, they have been stated because the prosecutor has argued questions to which they relate, claiming they are incident to the right to fix compensation.

After the consent order was made, the prosecutor proceeded to lay its rails and to operate its cars over the bridge, all parties in interest agreeing thereto.

The brief of the appellant argues, that the judgment appealed from is erroneous because, (a) the legislature has no power to require appellant to make payment for the use of the bridge in excess of its annual share of county taxes

NOVEMBER TERM, 1914.          253

87 *N. J. L.*      Public Serv. Ry. Co. v. Public Utility Board.

levied for maintaining bridges. (*b*) That the amount awarded is excessive. (*c*) That the legislature has no power to compel a street railway to extend its lines beyond the route fixed in its charter, or to impose charges therefor without the consent of the company or its stockholders.

Concerning the last proposition, it is sufficient to say, that the order for extension is not brought up by this writ, but if it was, it was consented to by the prosecutor and it has voluntarily complied with it, and resumed the operation of its lines over the new bridge in the same manner as it did over the old bridge, and for which use it paid a yearly rental.

Having consented to the order to run its cars over the bridge, it is now estopped from complaining that it was compelled to do what it agreed it would, if the necessary legal permission was granted. Such permission was granted, and prosecutor has availed itself thereof, as a privilege to use the bridge and it is now too late to complain of an order to which it consented.

The second point, viz., that the amount awarded is excessive, is without merit. The order of the board of utility commissioners is amply supported on this question by the testimony taken by it, and this court will not disturb its findings unless unreasonable, or is based upon some illegal principle, or lacks evidential support.

The only other point requiring consideration is the first, which challenges the right of the county to charge prosecutor for the use of the bridge beyond the ordinary taxes levied to erect and maintain bridges, thus making a discrimination between prosecutor and other members of the public. This proposition overlooks the fact that the use by the public generally, and that by the prosecutor, are very different in their nature, and that a more expensive and substantial structure is required to permit the operation of a street railway as a private enterprise for profit, that would answer the ordinary use by the public. This additional cost for prosecutor's benefit is beyond that demanded for the usual convenience of the public, and there is no legal reason why, when

a common carrier makes an unusual use of a bridge, it should not be required to contribute towards the additional cost incurred for its private benefit. It is not a public tax in the usual sense, but a charge for a use, which the user would have no right to enjoy except by consent of the county. The statute requiring the counties of this state to erect and maintain suitable bridges over streams, was not intended to compel municipalities to erect and maintain bridges of sufficient capacity to carry the modern trolley cars, and it must be assumed that the legislature enacted the law with reference to the well-known character of vehicles then in use by the public, and the county is only required to meet such contemplated use, and not to provide a more costly structure suitable to sustain and permit the use of electric or other trolley cars. The prosecutor is a common carrier bound to serve the public in a reasonable manner, and to provide its own structures for such purpose, and when, as in this case it avails itself of a county bridge built in expectation of such use, the legislature has the power to require it to pay therefor a reasonable compensation.

The case of *Bangor Railway and Electric Co.* v. *Orono, 84 Atl. Rep.* 385, is quite similar to the present case.

There being no error in this record, the judgment will be affirmed, with costs.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, KALISCH, BLACK, BOGERT, VREDENBURGH, WHITE, JJ. 10.

*For reversal*—None.